IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

LUFKIN DIVISION

| | | |
|---|---|---|
| KAAZIM ABUL 'UMAR<br>(aka Wesley L. Pittman) | § | |
| v. | § | CIVIL ACTION NO. 9:06cv24 |
| DIRECTOR, TDCJ-CID | § | |

MEMORANDUM ADOPTING REPORT AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND ENTERING FINAL JUDGMENT

The Petitioner Kaazim Abul 'Umar, proceeding *pro se*, filed this application for the writ of habeas corpus under 28 U.S.C. §2254 complaining of the legality of prison disciplinary action taken against him.  This Court ordered that the case be referred to the United States Magistrate Judge pursuant to 28 U.S.C. §636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for the Assignment of Duties to United States Magistrate Judges.

'Umar says that he was charged with failing to obey an order, for which offense he received punishments of reduction of classification status and 45 days of cell and commissary restrictions. He complained that he was denied witnesses and the right to cross-examine the charging officer, and indicated that the evidence was insufficient to support the finding of guilt.

After review of the pleadings, the Magistrate Judge issued a Report on February 13, 2006, recommending that the petition be dismissed.  The Magistrate Judge concluded that 'Umar had failed to show that he had been deprived of a constitutional liberty interest under Sandin v. Conner, 115 S.Ct. 2293, 2301 (1995).  That case held that the States may, under certain circumstances, create liberty interests which are protected by the Due Process Clause, but these interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.

1

The Magistrate Judge determined that none of the punishments imposed upon 'Umar exceeded his sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of their own force, nor did they impose a significant and atypical hardship in relation to the ordinary incidents of prison life.  Sandin, 115 S.Ct. at 2301 (30 days of disciplinary segregation held not an atypical or significant hardship); *see also* Pichardo v. Kinker, 73 F.3d 612, 613 (5th Cir. 1996); Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000); *and* Wilson v. Budney, 976 F.2d 957, 958 (5th Cir. 1992) (no protected liberty interest in custodial classification).  The Magistrate Judge also stated that even if 'Umar had shown the deprivation of a constitutionally protected liberty interest, his allegations did not show a constitutional violation.

'Umar filed objections to the Magistrate Judge's Report on February 27, 2006.  In his objections, 'Umar first reiterates the facts of his claim.  He states that as a result of the disciplinary conviction, his parole eligibility date was set back by a year, from March of 2006 until March of 2007.

'Umar says that Texas provides two avenues for early release from prison, these being parole and mandatory supervision.  He states that the Texas mandatory supervision procedures create a liberty interest and that the loss of good time therefore triggers the protections of the Constitution when mandatory supervision is implicated.

'Umar explains that at the time that he was convicted and given a life sentence, good time was not discretionary; if an inmate was not released on parole, he could count on release when his good time plus his flat time equaled the length of his sentence; he says that when this occurred, the inmate was entitled to "a full discharge from his crime." Although 'Umar is serving a life sentence, he says that under the law in effect at the time of his conviction, "a life sentence equaled sixty years."

Next, 'Umar argues that since 1993, the Parole Board's status as an independent agency is "illusory."  He says that in real life, the Board has been subordinated to the structure of the Texas Department of Criminal Justice, with the result that the Board has now become "a tool" to keep the population level in prison high, apparently for revenue enhancement.

In his second point, 'Umar argues that as a result of the disciplinary case, he was moved to a "gang-infested building," which he says works a significant hardship upon him.  He implies that this was the result of retaliation for his complaining about his living conditions, which led to the disciplinary case.

'Umar's objections are without merit.  While he complains at length that his parole eligibility has been set off, the Fifth Circuit has expressly held that there is no right nor any constitutionally protected liberty interest in release on parole under Texas law.  Creel v. Keene, 928 F.2d 707, 708-09 (5th Cir. 1991); *see also* Allison v. Kyle, 66 F.3d 71, 74 (5th Cir. 1995). Furthermore, the Fifth Circuit has held in a somewhat different context that the timing of an inmate's release is too speculative to afford a constitutionally cognizable right to a particular time-earning classification. Malchi v. Thaler, 211 F.3d 953, 959 (5th Cir. 2000).  In this case, as 'Umar himself makes clear with his complaint about the Parole Board, he has no guarantee of release on parole, and complains simply that his eligibility date for consideration for release has been moved; as in Malchi, the timing of his release date is too speculative to give 'Umar a liberty interest in the date of parole eligibility. 'Umar's claim on this point is without merit.

'Umar refers to mandatory supervision but does not expressly invoke it.  He acknowledges that he is serving a life sentence, and so under Texas law, as construed by the Texas Court of Criminal Appeals, he is not eligible for release on mandatory supervision.  Ex Parte Franks, 71 S.W.3d 327, 328 (Tex.Crim.App. 2001); *see also* Arnold v. Cockrell, 306 F.3d 277, 279 (5th Cir. 2002).  This is because under the law in effect at the time of 'Umar's offense, he would be released to mandatory supervision "when the calendar time he has served plus any accrued good conduct time equal the maximum term to which he was sentenced."  Franks, 71 S.W.3d at 327-28.  It is mathematically impossible for the calendar time served plus the good time accumulated to add up to "life."

Although 'Umar argued that a life sentence was equal to 60 years, this is the position taken by the dissent in Franks, which was rejected by the majority of the Court.  Consequently, this

3

argument is untenable.  'Umar is therefore ineligible for release on mandatory supervision, and his argument is limited to eligibility for parole, in which he has no constitutionally protected liberty interest.  This claim must fail.

In his second claim, 'Umar argues that he was transferred to a more dangerous building, which he says is a "significant hardship."  However, the Fifth Circuit has held that a transfer from a preferable to an inferior prison does not set out a substantive due process claim because prisoners have no liberty interest in residence in one prison or another.  Jackson v. Cain, 864 F.2d 1235, 1250 (5th Cir. 1989), *citing* Meachum v. Fano, 427 U.S. 215, 225 (1976).  Similarly, the Fifth Circuit has held that inmates have no protected liberty interest in their classification or housing assignments.  Luken v. Scott, 71 F.3d 192, 193 (5th Cir. 1995).  Transfers of prisoners from one area of the prison to another are not atypical, and 'Umar has failed to show that the transfer of which he complained was such a "significant hardship" as to violate a constitutionally protected liberty interest.  His objections on this point are without merit as well.[1]

The Court has conducted a careful *de novo* review of the pleadings in this cause, including the original petition, the Petitioner's memoranda in support of the petition, the Report of the Magistrate Judge, the Petitioner's objections thereto, and all pleadings, documents, and records in the case.  Upon such *de novo* review, the Court has concluded that the Report of the Magistrate Judge is correct and that the Petitioner's objections are without merit.  It is accordingly

ORDERED that the Petitioner's objections are overruled and that the Report of the Magistrate Judge is ADOPTED as the opinion of the District Court.  It is further

---

[1]To the extent 'Umar may claim that prison officials have been deliberately indifferent to his safety, or have retaliated against him through the transfer, such claims would not implicate the validity of the disciplinary case and thus cannot form the basis of a habeas corpus petition.  The Court offers no opinion as to the merits of any civil rights lawsuit which 'Umar may bring.

ORDERED that the above-styled application for the writ of habeas corpus be and hereby is DISMISSED with prejudice.   Finally, it is

ORDERED that any and all motions which may be pending in this action are hereby DENIED.

**SIGNED** this the 1   day of **March, 2006.**



Thad Heartfield
United States District Judge